IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 95-CR-578-02 |
| | : | |
| v. | : | CIVIL ACTION NO. 99-CV-4469 |
| | : | |
| BASEM ALLAN | : | |

**MEMORANDUM AND ORDER**

Kauffman, J.                                                                                                          June 14, 2007

Before the Court is Petitioner Basem Allan's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Motion"). For the reasons set forth below, the Motion will be denied.

**BACKGROUND**

On October 17, 1995, the Government filed a sixteen-count Indictment charging Basem Allan ("Petitioner") and seven other defendants with conspiracy to commit copyright infringement and traffic in counterfeit labels, trafficking in counterfeit labels, criminal copyright infringement, conspiracy to launder money, and money laundering, in violation of 18 U.S.C. §§ 371, 2319, 1956, 1957, and 982. On May 24, 1996, a jury found Petitioner guilty of conspiracy to infringe copyrights and traffic in counterfeit labels (Count One), copyright infringement (Count Six), conspiracy to launder money (Count Eight), and money laundering (Counts Ten, Twelve and Thirteen). In a Judgment dated May 21, 1997, the Honorable Marjorie O. Rendell sentenced Petitioner to 150 months imprisonment, three years supervised relief, and a $3600 fine. On June 9, 1998, the Third Circuit affirmed the Judgment. United States v. Basem Allan, 162 F.3d 1152 (3d Cir. 1998) (table).

Petitioner argues that his Sixth Amendment right to effective assistance of counsel was violated in a variety of ways, that exculpatory statements by a key Government witness were not disclosed in violation of Brady v. Maryland, 373 U.S. 83 (1963), and that the sentencing guideline for money laundering, U.S.S.G. § 2S1.1, should not have been used because his conduct was outside the "heartland" of that guideline.  The Court referred Petitioner's Motion to United States Magistrate Judge Jacob P. Hart for a Report and Recommendation.  See 28 U.S.C. § 636(b)(1)(B).  Following an evidentiary hearing, Magistrate Judge Hart recommended that the Court deny Petitioner's Motion.  The Court has conducted a de novo review of the portions of the Report and Recommendation to which objections were made.  28 U.S.C. § 636(b)(1)(C).

## ANALYSIS

**I.     Ineffective Assistance of Counsel Claims**

Petitioner contends that he was denied his constitutionally guaranteed right to effective assistance of counsel in six respects: (1) his attorney, Anthony Carrozza ("Carrozza"), failed to explore the possibility of a plea bargain; (2) Carrozza failed to disclose to the Court that he had a conflict of interest because he was under investigation for money laundering; (3) Carrozza failed to interview witnesses who would have shown that a key Government witness, Ibrahim Allan, had a motive to testify falsely; (4) Carrozza failed to prepare for the cross-examination of Ibrahim Allan; (5) Carrozza did not prepare adequately for sentencing by failing to utilize shipping records that would have shown that a large percentage of Petitioner's sales should not have been counted toward the value of the crimes for which he was convicted; and (6) Carrozza

failed to request a jury instruction that Petitioner could not be convicted under 18 U.S.C. § 1956(h) for behavior prior to the date of its enactment, October 28, 1992.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The United States Supreme Court has long recognized that "the right to counsel is the right to the <u>effective</u> assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added) (citing <u>Reece v. Georgia</u>, 350 U.S. 85, 90 (1955); <u>Glasser v. United States</u>, 315 U.S. 60, 69-70 (1942); <u>Avery v. Alabama</u>, 308 U.S. 444, 446 (1940); <u>Powell v. Alabama</u>, 287 U.S. 45, 57 (1932)).

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court explained that a violation of the right to effective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Id.</u> at 687. Consequently, even if a defendant shows that counsel's performance was deficient, he cannot prevail if counsel's error "had no effect on the judgment." <u>Id.</u> at 691. In other words, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." <u>Id.</u> at 692. "When a defendant

challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.[1]

### A.  Failure to Negotiate a Plea Agreement

Petitioner alleges that Carrozza was deficient because he "failed to plea bargain for [him] and failed to communicate to [him] that the United States Attorney's Office was willing to offer [him] concessions in return for a plea of guilty, a circumstance that [he] did not learn until late in the trial." Memorandum Setting Forth Additional Details of Grounds for Relief ("Memo") at 2. Magistrate Judge Hart held a hearing on the ineffective assistance of counsel claims (the "Hearing"). At the Hearing, Petitioner testified that Carrozza told him that the Government would not talk to him about a plea and actively discouraged him from pleading guilty. Transcript of Hearing Before Magistrate Judge Hart ("Hearing Transcript") at 65-68, 108-110. He also testified that Carrozza told him that he was not guilty of a crime, even though he had known that some of his customers were counterfeiters, because he did not receive any profits from the illegal counterfeit sales. Id. at 65.

Carrozza testified at the Hearing that the Assistant United States Attorney ("AUSA") had told him prior to trial that any guilty plea necessarily would involve a "substantial payment that would have to be made to the Government for restitution," and that Petitioner told him that he "absolutely was not willing to pay any money, didn't have any money, and always said he didn't have any money to pay any money to the Government to facilitate or enter into any plea

---

[1] "Although [these] principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." Strickland, 466 U.S. at 496.

discussions." Id. at 30.  He further testified that when the AUSA approached them during trial about a possible plea and mentioned wanting a minimum of $500,000 in restitution, Petitioner said "absolutely positively no."  Id. at 30-31.

In his Report and Recommendation, Magistrate Judge Hart made "a credibility determination in favor of Carrozza, and [found] that [Petitioner] told his attorney that he was not willing to make the restitution required by the Government in order to enter plea negotiations." Report and Recommendation at 6.  He also found "as a matter of fact that the Government was unwilling to enter into guilty plea negotiations unless Petitioner agreed to pay substantial [restitution]," noting that "[t]his finding is supported by Carrozza's testimony, and is also partly corroborated by [Petitioner's] statement that when he tried to speak to the AUSA during trial, he was told that he would need to pay $250,000."  Id.  Moreover, he noted that although Carrozza's defense did not succeed, Petitioner did not demonstrate that pursuing such a defense "was so foolhardy that Carrozza's failure to negotiate a plea bargain necessarily rendered his assistance inadequate."  Id. at 7.

"Our judicial system affords deference to the finder of fact who hears the live testimony of witnesses because of the opportunity to judge the credibility of those witnesses."  Hill v. Beyer, 62 F.2d 474, 482 (3d Cir. 1995).  Petitioner argues that this Court should not accord these findings deference because Magistrate Judge Hart's Report and Recommendation did not discuss that Carrozza was disbarred in 1999 or that he was involved in a money laundering investigation. See Basem Allan's Objections to Report and Recommendation of Magistrate Judge Jacob P. Hart ("Objections") at 6-7.  However, it is clear from the Hearing Transcript that both of these issues

were explored at length during the Hearing, and therefore, that Magistrate Judge Hart was aware of these facts when he made his credibility determinations. Hearing Transcript at 4-17. Accordingly, the Court adopts Magistrate Judge Hart's finding that Petitioner was not deprived of effective assistance of counsel with regard to negotiating a plea agreement, and the claim will be denied.

### B. Conflict of Interest

Petitioner next argues that Carrozza "possessed a conflict of interest with [him] and such conflict of interest deprived [him] of the effective assistance of counsel in that ... Carrozza told [him] prior to trial that Mr. Carrozza himself was under investigation by the United States government in connection with alleged money laundering," but did not disclose this investigation to the Court. Memo at 2. Magistrate Judge Hart noted in his Report and Recommendation that Petitioner has conceded that Carrozza did not have a conflict of interest. Petitioner Basem Allan's Post-Hearing Memorandum in Support of Relief at 7. Similarly, in his Objections to the Report and Recommendation, Petitioner acknowledges that "no formal conflict existed at the time Carrozza represented Petitioner at trial." Objections at 8-9.[2] Accordingly, this claim will be denied.

---

[2] While conceding that there may not have been a "true conflict of interest," Petitioner argues that Carrozza's failure to disclose the investigation "should have affected the Magistrate Judge's credibility determinations and this Court's decision on whether to accept those credibility determinations." Objections at 9. As discussed supra, Magistrate Judge Hart heard lengthy testimony regarding the investigation at the Hearing and was aware of the issue when he made his credibility determinations. Hearing Transcript at 4-17.

C.     **Ibrahim Allan**

Petitioner makes two related arguments regarding Carrozza's trial preparation with respect to Ibrahim Allan, one of the Government's witnesses at trial.  First, he claims that Carrozza "failed to interview witnesses whose testimony would have demonstrated that ... Ibrahim Allan ... possessed a substantial motive to falsely accuse [Petitioner] by reason of Ibrahim Allan having stolen certain property from ... [Petitioner] ... and was testifying against [him] ... in retaliation for [his] ... accusations against [him]."  Memo at 1-2.  Second, he contends that Carrozza "failed to prepare properly for cross-examination of the government's critical witness ... Ibrahim Allan, and consequently, was unable effectively [to] impeach the government's key witness."  Memo at 2.

Carrozza testified that "[a]ll counsel recognized that [Ibrahim] was most likely the key Government witness in the case."  Hearing Transcript at 22.  Accordingly, he, along with counsel for other co-defendants, "spent a lot of time meeting, discussing, reviewing about what approach to take to cross-examine [Ibrahim]."  Id.  He testified that they had "a lot of material from the Government regarding [Ibrahim's] prior convictions, regarding some kind of case that was pending against him in New Jersey, that Basem Allan had filed against him for theft of the equipment.  And basically the strategy was ... at trial [they] basically had a chart where [they] listed every lie that [Ibrahim] told that [they] could elicit through cross-examination, and it was over 50 lies, and that was hammered home and hammered home by each counsel."  Id.  He explained that the Government brought out on direct that Ibrahim had New Jersey charges pending against him, that he addressed the issue again on cross-examination, and that he argued

7

on closing that Ibrahim had lied because of the charges. Id. at 23, 24. He said that at the time of the trial, he did not believe that he would be allowed to present a lot of additional collateral evidence regarding the New Jersey charges. Id. at 23-24, 25.[3] He further testified that "every time I met with Basem Allan in preparing for trial the issue was always how to cross-examine and impeach [Ibrahim's] credibility." Id. at 24.

Based on this testimony, Magistrate Judge Hart "credit[ed] Carrozza's assertion that he prepared adequately for the cross-examination of Ibrahim Allan, and that he chose not to interview the individuals [Petitioner] lists based on his tactical decision that they were not important to his case." Report and Recommendation at 11. He concluded that even if Carrozza's performance had been deficient in this respect, "it is plain that [Petitioner] was not prejudiced by his actions." Report and Recommendation at 11-12. He further concluded that "[a]mple evidence was presented to the jury from which it could have concluded that Ibrahim Allan was lying about [Petitioner's] criminal activities because there was 'bad blood' between them arising from [Petitioner's] making a complaint against him for theft." Id. at 13.

Petitioner objects on the grounds that Magistrate Judge Hart "seems to ignore the significance of both Ibrahim Allan's testimony (to which Carrozza did not object) and the impact that adequate preparation concerning the affidavit would have had to undermine Ibrahim Allan's

---

[3] Specifically, he testified that "[a]t that point in time I don't think it was that critical because we had the documentation from the Government that the criminal charges were pending and we were going to be able to confront [Ibrahim] about those criminal charges. Like I said, I don't believe that court would have permitted us to hold a mini trial to determine [Ibrahim's] guilt or innocence by calling four or five, six witnesses to testify that [Petitioner's] criminal allegations against [Ibrahim] were true." Hearing Transcript at 25.

general credibility." Objections at 10.  The Court disagrees.  As Magistrate Judge Hart noted, the jury never saw the affidavit at issue or heard testimony on it.  Moreover, Carrozza elicited an admission from Ibrahim that Petitioner had sought to have the New Jersey charges dismissed as far back as 1993.  Thus, even if the Court would have allowed Carrozza to call numerous additional witnesses during trial to testify that Petitioner had sought to resolve his differences with Ibrahim in 1993 and 1994, Petitioner was not prejudiced by his strategic decision not to do so.  With respect to Petitioner's more general assertion that Carrozza did not prepare for Ibrahim's cross-examination, the Court defers to Magistrate Judge Hart's credibility determination regarding Carrozza's assertions about how he prepared for trial, and more specifically, for discrediting Ibrahim on cross-examination.  See Hill, 62 F.2d at 482. Accordingly, the Court will deny both of Petitioner's ineffective assistance of counsel allegations related to Ibrahim Allan.

### D. Alleged Failure to Obtain Shipping Records for Sentencing

Petitioner's next claim is that:

> Mr. Carrozza failed to obtain and use extensive shipping records that would have demonstrated that a substantial amount of "tapes" alleged[ly] used for copyright infringement had actually been lawfully shipped overseas.  Attorney Carrozza did not properly present evidence to mitigate the "loss" amount.

Memo at 2-3.  Pursuant to the Federal Sentencing Guidelines, the length of Petitioner's sentence depended, in part, on the value of his crimes.  Petitioner argues that had Carrozza obtained and introduced in evidence business records demonstrating that a substantial number of the tapes he

sold were to non-criminal customers, the value of his crimes might have been reduced, enabling him to receive a lower sentence under the Guidelines.

At the Hearing, Petitioner testified that he told Carrozza to obtain his shipping records (specifically, his UPS record book), which were seized by the FBI, because they would show that he shipped products overseas to legal customers. Hearing Transcript at 90. He claims, however, that Carrozza told him "[i]t's not important, don't worry about it, they've got nothing against you." Id. at 91. Carrozza, on the other hand, testified that Petitioner told him during pre-trial preparation that he wanted to argue at trial that a large number of his customers were legal, but that he was only able to produce "a couple receipts" to support this contention. Id. at 57. He further testified that he did not remember Petitioner telling him that the FBI had his business records, but that if he had, he would have arranged to obtain those records prior to trial. Id. at 58. In addition, the Government produced a sworn affidavit from D. James Bannan, a Special Agent with the U.S. Postal Inspection Service who executed the federal search warrant on Petitioner's business, which states that no UPS record book was seized and that he is not aware of any other seized evidence which would demonstrate that Petitioner did more than a small amount of business with legal customers.

Based on this evidence, Magistrate Judge Hart concluded that "a credibility finding in favor of Carrozza is warranted." Report and Recommendation at 15. In reaching this conclusion, Magistrate Judge Hart noted that "[Petitioner's] credibility regarding this claim is sharply undermined by his failure to produce at the ... hearing either his shipping records (or proof that he had tried unsuccessfully to obtain them from the Government) or any alternative

documentation that would have shown that he did, in fact, have a large volume of legitimate business." Id.  As Magistrate Judge Hart correctly concluded, Petitioner has not shown that he was prejudiced under Strickland because he has not demonstrated the existence of the business records that allegedly would have helped him.  Id.  Accordingly, the Court will deny the claim.

### E.  Jury Instruction Regarding 18 U.S.C. § 1956(h)

Petitioner's final ineffective assistance claim is that Carrozza failed to request an instruction stating that the jury could not convict him under 18 U.S.C. § 1956(h) for conspiracy to commit money laundering (Count Eight), unless it found that he was involved in the conspiracy after October 28, 1992, the effective date of the statute.[4]  In his Report and Recommendation, Magistrate Judge Hart determined that "even if Carrozza had been ineffective in failing to discern the need or advisability of such an instruction, [Petitioner] was not prejudiced, because the jury convicted [him] on several counts which were supported in the indictment by acts which also formed predicate acts for the alleged conspiracy, and which took place long after October 28, 1992."  Report and Recommendation at 16.

The Court agrees with the conclusion reached by Magistrate Judge Hart.[5]  When acts in a continuing offense occur before the effective date of a statute, the jury ordinarily is instructed

---

[4] Section 1956(h) raised the maximum penalty for such a conspiracy to the same level as the underlying substantive offense.

[5] The Court addresses the issue of prejudice first.  The Supreme Court has noted that "[t]he performance component need not be addressed first.  'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed.'"  Smith v. Robbins, 528 U.S. 259, 286 n.14 (2000) (quoting Strickland, 466 U.S. at 697).  As discussed below, the prejudice component is dispositive of the ineffectiveness claim, and therefore the Court need not reach the performance component.

11

that to convict, it must find that the offense continued after the effective date.  See, e.g., United States v. Garcia Abrego, 141 F.3d 142, 167 (5th Cir. 1998).  Petitioner contends that Carrozza's failure to request a jury instruction prejudiced the outcome of his case because the jury might have found him guilty of the conspiracy count based on an acceptance of evidence concerning overt acts which occurred prior to October 28, 1992.  Objections at 12.  In this case, however, the Court finds that there is no "reasonable probability" that the jury would have reached a different result on Count Eight, even if Carrozza had requested the jury instruction.  Strickland, 466 U.S. at 695.

The jury's verdict on other counts of the Indictment demonstrates the jury's belief that Petitioner was involved in several overt acts after October 28, 1992 that supported Count Eight.  For example, he was convicted of substantive money laundering based on a transaction that occurred on May 17, 1993 (Count Ten), and for engaging in monetary transactions in criminally deprived property based on transactions that occurred on April 16, 1993 and November 23, 1993 (Counts Twelve and Thirteen, respectively).  These three acts also constituted three of the overt acts charged in Count Eight as furthering the money laundering conspiracy – specifically, Overt Act 17 (the April 16, 1993 transaction), Overt Act 19 (the May 17, 1993 transaction), and Overt Act 20 (the November 23, 1993 transaction).  This demonstrates that the jury believed that the conspiracy to launder money continued beyond October 28, 1992.

In light of the jury's verdict, there is no reasonable probability that the jury would have reached a different result with respect to Count Eight even if Carrozza had requested a jury

instruction. Accordingly, Petitioner has not met his burden of affirmatively proving prejudice and his claim will be denied.

## II.     Brady Claim

Petitioner next argues that his due process rights were violated because the Government suppressed prior exculpatory statements made by Ibrahim Allan in violation of Brady v. Maryland, 373 U.S. 83 (1963). In his Report and Recommendation, Magistrate Judge Hart found that Petitioner failed to meet his burden under Brady of showing: (1) suppression by the prosecution after a request by the defense; (2) the evidence's favorable character for the defense; and (3) the materiality of the evidence. Moore v. Illinois, 408 U.S. 786, 794 (1972) (discussing Brady). Moreover, as Magistrate Judge Hart noted, this claim was not raised on direct appeal. Therefore, the claim is defaulted unless Petitioner shows cause for his failure to raise it and prejudice resulting therefrom. United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993). Petitioner did not argue such cause and prejudice in his Motion or his Objections. Accordingly, his Brady claim will be denied.

## III.    Sentencing Claim

Finally, Petitioner claims that he should be resentenced on the money laundering counts because the criminal conduct in which he engaged is not within the "heartland" of the money laundering offense. He cites to United States v. Smith, 186 F.3d 290 (3d Cir. 1999), in which the Third Circuit ordered the resentencing of defendants who were convicted of charges arising out of an embezzlement/kickback scheme because their conduct did not fall within the "heartland" of

U.S.S.G. § 2S1.1. Id. at 297-98.[6] In his Report and Recommendation, Magistrate Judge Hart looked to Smith and its progeny, and concluded that Petitioner's crime was within the heartland of the money laundering guideline, U.S.S.G. § 2S1.1, and that he therefore is not entitled to resentencing. See Report and Recommendation at 18-20.

The Third Circuit has held that Smith and its progeny "all are in accord that the heartland of the money laundering guidelines includes, in addition to drugs and organized crime, cases involving typical money laundering, financial transactions that are separate from the underlying crime and that are designed either to make illegally obtained funds appear legitimate, to conceal the source of some funds, or to promote additional criminal conduct by reinvesting the funds in additional criminal conduct." Diaz, 245 F.3d at 309-10 (citations omitted). Magistrate Judge Hart concluded that Petitioner's participation in "a multi-million dollar criminal enterprise with a potential for injury to the legitimate music industry limited only by the number of existing music purchasers" had serious enough social consequences to warrant the application of the money laundering guideline. Report and Recommendation at 19-20 (citing United States v. Ceferatti, 221 F.3d 502 (3d Cir. 2000) and United States v. Edwards, 2000 WL 1277930, at *3 (E.D. Pa.

---

[6] The Sentencing Guidelines were amended after the Smith decision to clarify that "that sentencing court *must* apply the offense guideline referenced in the Statutory Index for the statute of conviction" unless the defendant has stipulated to the commission of a more serious offense in a plea agreement. See United States v. Hlinak, 216 Fed. Appx. 213, 215 (3d Cir. 2007) (quoting U.S. Sentencing Guidelines Manual app. C at 30 (Supp. 2000)). However, the Third Circuit has held that the amendment in question, Amendment 591, cannot be applied retroactively to a sentence imposed before November 1, 2000 because it represented a substantive change in the law. United States v, Diaz, 245 F.3d 294, 303 (3d Cir. 2001). Accordingly, since Petitioner was sentenced on May 21, 1997, the Court must, as Magistrate Judge Hart did, apply the pre-amendment guidelines, as well as the "heartland" analysis established by Smith and its progeny. Id. at 305.

Sept. 7, 2000)). Moreover, he concluded that since Petitioner had used criminal profits to continue his conspiracy and expand its criminal activities, he had satisfied the Smith standard by engaging in financial transactions separate from the underlying crime which "promote[d] additional criminal conduct by reinvesting the funds in additional criminal conduct." Report and Recommendation at 20 (citing Smith). The Court agrees with Magistrate Judge Hart's conclusions regarding the applicability of Smith and its progeny. Therefore, Petitioner's claim regarding resentencing will be denied.

## CONCLUSION

For the foregoing reasons, the Report and Recommendation will be approved and adopted and the Motion to Vacate, Set Aside, or Correct Sentence will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 95-CR-578-02 |
| v. | : | CIVIL ACTION NO. 99-CV-4469 |
| BASEM ALLAN | : | |

### ORDER

**AND NOW**, this 14th day of June, 2007, upon careful and independent consideration of the Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, and after review of the Report and Recommendation of United States Magistrate Judge Jacob P. Hart, Basem Allan's Objections, and the Government's Response thereto, and for the reasons set forth in the accompanying Memorandum, **IT IS ORDERED** as follows:

1. The Report and Recommendation is **APPROVED AND ADOPTED**;

2. The Motion to Vacate, Set Aside, or Correct Sentence is **DENIED**; and

3. There is no basis for the issuance of a certificate of appealability.

BY THE COURT:


/s/ Bruce W. Kauffman
**BRUCE W. KAUFFMAN,  J.**